IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CRIME, JUSTICE & AMERICA, INC.,  )
a California Corporation; and    )
RAY HRDLICKA, an individual,     )   2:08-cv-343-GEB-EFB
                                 )
            Plaintiffs,          )   ORDER[*]
                                 )
       v.                        )
                                 )
PERRY L. RENIFF, in his official )
capacity of Sheriff of the County)
of Butte, California,            )
                                 )
            Defendant.           )
_____)

Defendant moves for summary judgment on Plaintiffs' sole claim alleged under the First Amendment; specifically, Plaintiffs claim Defendant's denial of their request to distribute unsolicited copies of Plaintiffs' Crime, Justice & America ("CJA") publication to inmates at the Butte County Jail violates Plaintiffs' First Amendment right to communicate with inmates. Defendant argues Plaintiffs do not have a First Amendment right to distribute unsolicited copies of CJA to inmates, and contend even assuming *arguendo* that Plaintiffs have

---

[*] This matter was determined to be suitable for decision without oral argument. L.R. 78-230(h).

1

that right, Defendant's refusal to distribute unsolicited copies of CJA to inmates should be upheld because "it is reasonably related to legitimate penological interests," citing Turner v. Safley, 482 U.S. 78, 89 (1987).

"[A] fundamental rule of judicial restraint" is that "questions of a constitutional nature [are avoided] unless absolutely necessary to a decision of the case." U.S. v. Kaluna, 192 F.3d 1188, 1197 (9th Cir. 1999) (quoting Jean v. Nelson, 472 U.S. 846, 854 (1985); Burton v. United States, 196 U.S. 283, 295 (1905)). In Turner, the Supreme Court held "a prison regulation [that] impinges on . . . [First Amendment] rights . . . is valid if it is reasonably related to legitimate penological interests." Turner, 482 U.S. at 89.

> To guide courts in evaluating whether a challenged regulation is reasonably related to legitimate penological interests, Turner established the following four-part test:
>
> (1) whether the regulation is rationally related to a legitimate and neutral governmental objective; (2) whether there are alternative avenues that remain open to the inmates to exercise the right; (3) the impact that accommodating the asserted right will have on other guards and prisoners, and on the allocation of prison resources; and (4) whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials.

Morrison v. Hall, 261 F.3d 896, 901 (9th Cir. 2001) (quotation and citation omitted).

Defendant argues the first Turner factor weighs in his favor since his refusal to distribute unsolicited copies of CJA is rationally related to his legitimate and neutral interest in maintaining a secure and orderly jail. Captain Jerry Jones and Lieutenant Byran Flicker of the Butte County Jail each declare the Butte County Jail has a mail distribution policy that prohibits

distribution of unsolicited commercial mail to inmates.  They declare this mail policy limits the amount of paper to which inmates may have access, which thereby restricts inmates' ability to use paper to secret contraband and allows staff to conduct cell searches more efficiently; limits the amount of material inmates' may use to plug their toilets and flood their cells; and restricts inmates' ability to place paper over their windows and light fixtures, which prevents staff from conducting required welfare checks efficiently.  They further declare this mail policy "ensures that staff have the ability to adequately search every piece of [incoming] mail . . . [to] minimizes the amount of contraband that enters the facility."  (Jones Decl. ¶ 30; Flicker Decl. ¶ 11.)

Plaintiffs counter Defendant's refusal to distribute CJA is an arbitrary means of maintaining a secure and orderly jail, relying on Prison Legal News v. Lehman, 397 F.3d 692 (9th Cir. 2005).  In Lehman, the Ninth Circuit found "a ban on non-subscription [i.e., free] bulk mail and catalogs" violated the First Amendment.  Id. at 699.  The Ninth Circuit stated a ban "based on the postage rate at which the mail was sent" or the fact that "the inmates . . . did not pay for the mail that was sent to them" was an arbitrary means of "reduc[ing] the volume of mail that may contain contraband [because] it is far more likely that contraband would be contained in first class mail than in bulk mail."  Id. at 700.  The Ninth Circuit also stated this ban was an arbitrary means of "increas[ing] the efficiency of cell searches" since the prison "already regulate[d] the quantity of possessions that prisoners may have in their cells."  Id.

Defendant rejoins Lehman is distinguishable since "every piece of mail sent by [the publisher in Lehman was] sent as a result

3

of a request by the recipient" Id. at 700. The Ninth Circuit stated in Lehman "the fact that a request was made by the recipient . . . is important" in determining whether the sender's First Amendment right to communicate with the recipient has been violated because "[t]he sender's interest in communicating the ideas in the publication corresponds to the recipient's interest in reading what the sender has to say." Id. at 700-01 (internal quotation and citation omitted). Therefore, Lehman is distinguishable since Plaintiffs seek to send CJA to inmates "regardless of whether [inmates] requested the publication." Id. at 700.

Further Captain Jones and Lieutenant Flicker aver the prohibition of unsolicited commercial mail is not arbitrary because inmates would especially use unsolicited copies of CJA for improper purposes such as secreting contraband, plugging their toilets, and covering windows and light fixtures, because "unlike personal mail, or attorney-client mail, inmates do not have a connection to unsolicited commercial mail, and they are less concerned that the unsolicited publications would be damaged, lost, or seized." (Flicker Decl. ¶¶ 22, 24; Jones Decl. ¶ 36.) They further aver that although there are regulations restricting the quantity of each inmate's possessions, these regulations are insufficient because inmates still "routinely attempt [to use their possessions] to secret contraband, start fires, plug their toilets, and cover their light and windows." (Jones Decl. ¶ 36; see also Flicker Decl. ¶ 22.) Accordingly, there is a rational relationship between the prohibition of unsolicited commercial mail and Defendant's interest in maintaining jail security; and the first Turner factor weighs in Defendant's favor.

Defendant also submits evidence on the second <u>Turner</u> factor demonstrating Plaintiffs have an alternative avenue to distribute <u>CJA</u> to inmates; specifically, Captain Jones avers "inmates can . . . request and receive publications . . . ." (Jones Decl. ¶ 9.) Plaintiffs counter this alternative could be satisfied, relying on Plaintiff Ray Hrdlicka's averment that Plaintiffs may "make public records requests for copies of [the Butte County Jail's] full inmate roster" and use this information to make "direct mailings" of <u>CJA</u> to each inmate. (Hrdlicka Decl. ¶¶ 21, 23.) Plaintiffs argue if they follow this procedure, Defendant would have "no apparent way to distinguish" solicited copies of <u>CJA</u> from unsolicited copies of <u>CJA</u>. (Opp'n at 31:12-17.) Plaintiffs appear correct, but their argument does not negate Defendant's position that Plaintiffs have an alternative. Accordingly, the second <u>Turner</u> factor also weighs in Defendant's favor.

Defendant also submits evidence on the third <u>Turner</u> factor. Captain Jones and Lieutenant Flicker each declare that distribution of unsolicited commercial mail would create an additional burden on the inadequate resources already existing at the Butte County Jail. Captain Jones declares for the past ten years, Defendant has experienced ongoing difficulties in maintaining adequate staffing, and that as a result of inadequate staffing, several programs, such as the inmate road crew, the inmate hog farm, and several vocational programs, had to be discontinued. Lieutenant Flicker declares jail staff currently needs to devote "approximately 6 hours a day to sort, search, transport and distribute the mail." (Flicker Decl. ¶ 10.) Captain Jones further declares there have already been complaints at

5

the Butte County Jail about "the timely distribution of incoming legal and personal mail." (Jones Decl. ¶ 23.)

Captain Jones also declares Defendant's "prohibition against unsolicited commercial mail is designed to limit the amount of mail that enters the facility, which in turn limits the amount of time and resources that must be expended to search and distribute incoming mail. . . . In addition, limiting the amount of staff time that is spent processing unsolicited commercial mail allows [Jones] and management staff more flexibility in assigning staff to perform other duties on an immediate and ongoing basis." (Jones Decl. ¶ 30.) He also declares "requiring [Defendant] to dedicate staff time to processing unsolicited publications would greatly interfere with staff's ability to process other mail, and, depending on the staffing levels and inmate population at any given time, would likely interfere with the provision of other services as well. . . ." (Jones Decl. ¶ 31; see also Flicker Decl. ¶¶ 11, 12.)

Plaintiffs counter distribution of CJA would not burden jail resources, relying on Hrdlicka's averment that Plaintiffs intend to make weekly distributions of CJA to only ten percent of the inmates in the Butte County Jail. (Hrdlicka Decl. ¶¶ 17, 19, 20, 23, 31.) Based on the list of inmates in the Butte County Jail provided by a Deputy County Counsel in August 2004, which showed approximately 570 inmates, Plaintiffs would only send approximately 57 copies of CJA to the Butte County Jail each week.

Captain Jones rejoins, declaring he is "concerned that if [the Butte County Jail] agree[s] to distribute unsolicited copies of [CJA] [then the Butte County Jail] would then have to permit other unsolicited newsletters, advertisements, and publications to be

6

distributed . . . as well." (Jones Decl. ¶ 33.) In light of Defendant's evidence concerning the impact distribution of unsolicited commercial mail could have on jail resources, the third <u>Turner</u> factor also weighs in Defendant's favor.

Defendant also argues the fourth <u>Turner</u> factor weighs in his favor since he has no "easy and obvious alternatives" and his mail policy is not an "exaggerated response" to prison concerns. Plaintiffs counter alternative ways to address Defendant's concerns already exist, pointing to Captain Jones and Lieutenant Flicker's averments that there are regulations restricting the quantity of each inmate's possessions. However, Captain Jones and Lieutenant Flicker aver these regulations are insufficient since inmates still "routinely attempt [to use their possessions] to secret contraband, start fires, plug their toilets, and cover their light and windows." (Jones Decl. ¶ 36; <u>see also</u> Flicker Decl. ¶ 22.) Therefore, the fourth <u>Turner</u> factor also weighs in Defendant's favor.

Since all four <u>Turner</u> factors weigh in favor of Defendant, Defendant's refusal to grant Plaintiffs' request to distribute unsolicited copies of <u>CJA</u> is "reasonably related to legitimate penological interests." <u>Turner</u>, 482 U.S. at 89. Accordingly, Defendant's motion for summary judgment is granted.

However, on March 17, 2009, Plaintiffs filed a motion for leave to amend the Complaint to add a new claim under the Clayton Act. This motion is untimely since the last motion hearing date prescribed in a pretrial scheduling order issued on May 2, 2008 was December 15, 2008. Plaintiffs fail to explain why they filed their motion to amend after the prescribed law and motion deadline and why they failed to schedule it for hearing on or before the last motion hearing date.

7

While it is recognized that Defendant's summary judgment motion sub judice was originally set for hearing on December 1, 2008, and that the hearing date for this motion was changed to January 12, 2009, in response to Plaintiffs' late request for a continuance of the motion filed November 26, 2008, that continuance Order did not otherwise extend the last hearing deadline for a motion.

Plaintiffs only address the "no further amendment" provision in the May 2 pretrial scheduling order, arguing that good cause exists for amending this portion of the scheduling order since they did not have a copy of a contract on which their Clayton Act claim depends until Defendant filed his summary judgment motion on October 30, 2008, and the basis for their Clayton Act claim did not arise until some unspecified time in November 2008. Plaintiffs have the burden, however, of demonstrating that they could not have filed their amendment motion as required by the May 2 pretrial scheduling order, and their failure to state when in November 2008 their Clayton Act claim ripened does not satisfy their burden.

As Plaintiffs must know, the new claim they seek to add would affect several deadlines prescribed in the May 2 pretrial scheduling order, including the discovery completion date which expired October 15, 2008, and trial date which is set for May 19, 2009, and Defendant should have been provided opportunity to litigate Plaintiffs motion to add a new claim "at [this] late stage of litigation" as prescribed in the May 2 pretrial scheduling order. Eagle v. Am. Tel & Tel. Co., 769 F.2d 541, 548 (9th Cir. 1985); see also Garcia v. Dillon Co., Inc., No. 05-cv-02339, 2008 WL 4509821, at *5 (D. Colo. Oct. 1, 2008) (denying the plaintiff's motion to amend where the plaintiff was "seeking to make this a brand new lawsuit, but

8

with a trial date that is only four months away); <u>Chaara v. Intel Corp.</u>, No. CIV 05-278, 2006 WL 4079030, at *1 (D. New Mex. May 31, 2006) (denying the plaintiff's motion to amend "because the case is ripe for dismissal rather than transformation into a lawsuit . . .").

Here that opportunity has been denied not only because of Plaintiffs' failure to comply with the last motion hearing date prescribed in the May 2 pretrial scheduling order, but also because of Plaintiffs' filing of a defective motion under Local Rule 5-137(c). This Rule provides "[i]f filing a document requires leave of Court, such as an amended complaint when an answer is on file, counsel shall attach the document proposed to be filed as an exhibit to the motion and lodge a proposed order as required be these Rules." <u>See also Stringham v. Lee</u>, No. CIV S-04-1530, 2007 WL 1302497, at *1 (E.D. Cal. Apr. 30, 2007) (denying motion to amend because it "was not accompanied by a proposed amended complaint and is defective on that basis alone"); <u>Meyer v. Schwarzenegger</u>, No. CIV S-06-2584, 2008 WL 2223253, at *1 (E.D. Cal. May 27, 2008) ("Since plaintiff did not submit a proposed second amended complaint, the court is unable to evaluate it and defendants are unable to determine whether they might stipulate to its filing. Plaintiff's defective motion for leave to amend must therefore be denied."). This Rule provides notice of the exact amendment proposed, which Plaintiffs has not given because of their failure to attach their proposed amended complaint. Although Plaintiffs state in the motion "[a]ttached hereto as Exhibit A is a true and correct copy of Plaintiffs' proposed Amended Complaint," the referenced proposed Amended Complaint is not attached.

Since Plaintiffs have failed to satisfy the Rule 16 good cause standard by not providing justification for filing a late

9

motion, violated Local Rule 5-137(c) by failing to attach their proposed Amended Complaint to their motion, and seek to add a new claim under the Clayton Act which is tantamount to filing a new lawsuit, reason has not been provided justifying delaying summary judgment Defendant seeks.

For the stated reasons, the Clerk of the Court shall enter judgment in favor of Defendant since his summary judgment motion is granted, and Plaintiff's defective motion filed March 17, 2009, is stricken.

Dated: March 18, 2009

_____
GARLAND E. BURRELL, JR.
United States District Judge