1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   CRIME, JUSTICE & AMERICA, INC., a              No.  2:08-cv-00343-TLN-EFB
     California Corporation; and RAY
12   HRDLICKA, an individual,

13                     Plaintiffs,                  **ORDER**

14          v.

15   JERRY W. SMITH, in his official capacity
     as Sheriff of the County of Butte,
16   California,

17                     Defendant.

18

19

20          This matter is before the Court on Plaintiffs' Motion for Entry of Judgment on Remand

21   (ECF No. 67) and Second Motion for Partial Summary Judgment (ECF No. 68).  Defendant

22   opposes both motions, requests a continuance to pursue discovery, and countermoves for partial

23   summary judgment.  (ECF Nos. 70, 71.)  For the reasons set forth below, Defendant's request for

24   a continuance is DENIED, Plaintiffs' motion for partial summary judgment is GRANTED IN

25   PART and DENIED IN PART, Plaintiffs' motion for judgment on remand is DENIED, and

26   Defendant's countermotion is DENIED.

27                                    **BACKGROUND**

28          This case and the pending motions are before the Court on remand from the Ninth Circuit.

*Hrdlicka v. Reniff*, 631 F.3d 1044, 1046 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1544, (2012).[1]  In

that opinion, the Ninth Circuit set out in detail the factual background of this case.  *Id.* at 1046–

48.  Thus, to avoid repetition, only the facts and procedural history most pertinent to decision of

the motions are set out below, and those facts were drawn from the parties' undisputed statements

of material fact.

### A.  Factual Background

*Crime Justice & America* ("CJA") magazine is a quarterly publication primarily intended

for inmates awaiting trial.  The content—written by attorneys, reformed offenders, and law-

enforcement personnel—addresses mostly issues germane to these inmates, such as constitutional

rights and criminal procedure.  CJA also includes advertisements for bail bondsmen and criminal-

defense attorneys—representing about 25% of the content.  CJA is distributed in one of two

ways: (1) Plaintiffs obtain a list of current inmates and mail the magazine unsolicited to about

10% of inmates, or (2) Plaintiffs deliver a bulk mailing to the jail for officials to distribute to

inmates.

Plaintiffs contacted Butte County Jail and requested to distribute CJA magazine to the

inmates there.  After Plaintiffs' request, Butte County Jail adopted a new mail-distribution policy

prohibiting the distribution of all unsolicited commercial mail.  Citing its recently adopted policy,

the Jail refused to allow Plaintiffs to distribute CJA.  Plaintiffs sue, *inter alia*, to enjoin

enforcement of the mail-distribution policy, arguing the policy is unconstitutional as applied

because it violates the First Amendment.

### B.  Legal Background

In the landmark case *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that

intermediate scrutiny applies to determine the constitutionality of prison rules.  Under the *Turner*

test, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid

if it is reasonably related to legitimate penological interests."  482 U.S. at 89.  "[S]everal factors

are relevant in determining the reasonableness of the regulation at issue.  First, there must be a

---

[1] Sheriff Reniff has since been replaced by Sheriff Smith, and the Court changed the name of the Defendant in the caption in a prior order under Fed. R. Civ. P. 25(d), which automatically substitutes the successor public officer when a public officer sued in his official capacity ceases to hold office.  (Order 1 n.*, ECF No. 64.)

1    'valid, rational connection' between the prison regulation and the legitimate governmental

2    interest put forward to justify it." *Id.* "A second factor relevant in determining the

3    reasonableness of a prison restriction . . . is whether there are alternative means of exercising the

4    right that remain open to prison inmates." *Id.* at 90. "A third consideration is the impact

5    accommodation of the asserted constitutional right will have on guards and other inmates, and on

6    the allocation of prison resources generally." *Id.* Finally, the Court must consider "evidence that

7    the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." *Id.*

8              **C.  Procedural Background**

9              In a prior order, this Court granted summary judgment for Defendant, holding that, "all

10   four *Turner* factors weigh in favor of Defendant" as a matter of law, such that "Defendant's

11   refusal to . . . distribute unsolicited copies of *CJA* is 'reasonably related to legitimate penological

12   interests.'" (Order 7:17–21, ECF No. 45 (citing *Turner*, 482, U.S. at 89).)  The Ninth Circuit

13   reversed, concluding that on the record before it, "questions of material fact preclude summary

14   judgment" because the court could not "hold as a matter of law under *Turner* that defendant[] . . .

15   sufficiently justified [its] refusal to distribute unsolicited copies of CJA to jail inmates."

16   *Hrdlicka*, 631 F.3d at 1046.  The appeals court remanded the case to this Court "for further

17   proceedings." *Id.* at 1055.[2]

18             In reversing the decision, the Ninth Circuit decided several issues, and reserved one issue,

19   that concern decision of the motions presently before this Court.  First, the court rejected the

20   defendants' argument that "the First Amendment [categorically] does not protect distribution of a

21   publication to inmates who have not requested it," *Hrdlicka*, 631 F.3d at 1048, and held that "a

22   publisher has a First Amendment interest in distributing, and inmates in receiving, unsolicited

23   publication." *Id.* at 1049.  Thus, the court held that *Turner*'s four-factor test applies to determine

24   the constitutionality of Plaintiffs' challenge to Defendant's jail regulation, and rejected

25   Defendant's argument to the contrary, and the dissent's argument, that "because a prison is a non-

26   public forum, a publisher has no First Amendment interest in distributing . . . unsolicited

27

28   [2] The Ninth Circuit in *Hrdlicka* considered and decided together the related appeals of this case and another separate action, *Hrdlicka v. McGiness*, No. 2:08-cv-00394.  631 F.3d at 1046.

1  publications." *Id.* at 1049–50 (citing *id.* at 1055–58 (Smith, J., dissenting)).

2        In analyzing de novo this Court's grant of summary judgment under <u>Turner</u>, the Ninth

3  Circuit held that several fact issues precluded summary judgment for Defendant.  Regarding the

4  first <u>Turner</u> factor—whether the regulation is "rationally related to a legitimate penological

5  objective"—the Ninth Circuit addressed Defendant's asserted penological objectives separately.

6  The court first addressed Defendant's assertion "that refusing to allow distribution of unsolicited

7  copies of CJA promotes" jail security "by reducing the likelihood of contraband . . . , and by

8  reducing the amount of clutter  in each inmate's cell thereby reducing the risk of fires and

9  enabling efficient cell searches." *Id.* at 1051.  Defendant supported his assertion arguing that

10  "unsolicited publications are more likely . . . to be used for 'nefarious purposes' such as blocking

11  lights or clogging toilets."  *Id.*  The Ninth Circuit held there was a fact question on this issue,

12  citing the jail's separate policy already "regulating inmates' possession of property, including

13  paper, in their cells," because it was "unclear the degree to which allowing distribution of CJA in

14  the jails would . . . adversely affect jail security" in light of the policy that already regulated

15  property.  *Id.* at 1052.

16        Next, the Ninth Circuit evaluated Defendant's "concern that allowing delivery of

17  unsolicited copies of CJA would require additional staff time."  *Id.*  Because the officers at

18  Defendant's jail "provided no information quantifying the additional resources that would be

19  required to distribute CJA," nor suggested that "unsolicited publications are more difficult to

20  inspect and deliver than solicited publications," the court held a fact issue precluded summary

21  judgment.  *Id.* at 1052–53.  Moreover, regarding Defendant's slippery slope assertion—that to

22  accept publication from one publisher would obligate the jail to accept other publications—the

23  court held that, because "Butte County jail officers did not present any evidence about other

24  requests to distribute unsolicited mail," a fact issue precluded summary judgment on this issue as

25  well.  *Id.* at 1053.

26        Next, the Ninth Circuit addressed Defendant's argument that distributing CJA may violate

27  the terms of an existing advertising agreement.  Butte County Jail had an exclusive contract with

28  Partners for a Safer America, an advertising company that operates jail bulletin boards on which

4

1   bail bondsmen post advertisements for a fee.  The court held a jail has no "legitimate penological

2   interest, for purposes of *Turner*, in protecting a profit made by impinging on inmates' First

3   Amendment rights."  *Id.*

4        On the second and third *Turner* factors—alternative avenues and impact of

5   accommodation—the Ninth Circuit held material questions of fact remain, precluding summary

6   judgment.  Specifically, the court held "there is a material question of fact whether, as a practical

7   matter, Plaintiffs can effectively reach county jail inmates if they can deliver CJA only upon

8   request."  *Id.* at 1054.  Moreover, because officers at the jail "have not explained how mail

9   inspectors will distinguish between a copy of CJA [that is requested] and one that is not," "there

10  are material questions of fact as to whether, and to what degree, the jail[] would be forced to

11  expend significant additional resources if CJA is delivered . . . ."  *Id.*  Further, the court observed

12  that the "undisputed fact that CJA is currently distributed in more than 60 counties throughout 13

13  states, including in 32 California county jails, suggests that the response . . . in this case may be

14  exaggerated," the fourth and final *Turner* factor.  *Id.* at 1055.

15       Finally, in concluding that Defendant was not entitled to summary judgment, the Ninth

16  Circuit declined to decide the validity of Defendant's separate justification: Defendant's concern

17  that distribution of CJA violates California's law regulating bail advertising.  *Id.*  Defendant again

18  raises this issue here in his opposition to Plaintiffs' motion for partial summary judgment, which

19  this Court decides below.

20                                    **STANDARD**

21       Summary judgment should be granted "if the movant shows that there is no genuine

22  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

23  Civ. P. 56(a).  "In essence," the inquiry is "whether the evidence presents a sufficient

24  disagreement to require submission to a jury or whether it is so one-sided that one party must

25  prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

26  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but

27  rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just,

28  speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317,

1  327 (1986) (quoting Fed. R. Civ. P. 1).

2          The moving party bears the initial burden of showing the Court either "that there is an

3  absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, or by

4  submitting affirmative "evidence negating an essential element of the nonmoving party's claim or

5  defense." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir.

6  2000).  The burden then shifts to the nonmoving party, which "must establish that there is a

7  genuine [dispute] of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

8  U.S. 574, 585 (1986).

9          To carry this burden, the nonmoving party must "do more than simply show that there is

10 some metaphysical doubt as to the material facts." *Id.* at 586.  "The mere existence of a scintilla

11 of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably

12 find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.  The parties must cite "to particular

13 parts of materials in the record, including depositions, documents, electronically stored

14 information, affidavits or declarations, stipulations (including those made for purposes of the

15 motion only), admissions, interrogatory answers, or other materials," or by "showing that the

16 materials cited do not establish the absence or presence of a genuine dispute."  Fed. R. Civ. P.

17 56(c)(1).

18         Further, Local Rule 260(b) prescribes:

19              Any party opposing a motion for summary judgment or summary
               adjudication [must] reproduce the itemized facts in the [moving
20             party's] Statement of Undisputed Facts and admit those facts that
               are undisputed and deny those that are disputed, including with
21             each denial a citation to the particular portions of any pleading,
               affidavit, deposition, interrogatory answer, admission, or other
22             document relied upon in support of that denial.

23 If the nonmovant does not "specifically" controvert duly supported "facts identified in the

24 [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the

25 validity of the facts contained in the [movant's] statement." *Beard v. Banks*, 548 U.S. 521, 527

26 (2006).

27         In deciding summary judgment, the Court views "the evidence in the light most

28 favorable" to the nonmoving party. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th

1    Cir. 2009).  "All justifiable inferences are to be drawn" the nonmovant's favor, and the

2    nonmovant's "evidence is to be believed."  *Id.*  "Credibility determinations, the weighing of the

3    evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a

4    judge . . . ruling on a motion for summary judgment . . . ."  *Anderson*, 477 U.S. at 252.

5                                                          **ANALYSIS**

6          **A.       Defendant's Rule 56(d) Motion for Continuance**

7          In his opposition to Plaintiffs' motion for partial summary judgment, Defendant moves for

8    a continuance to conduct discovery.  (Def.'s Opp'n to Mot. Summ. J./Mot. Pursuant Rule 56(f);

9    Countermot. Summ. Adjudication Pursuant Local R. 230(e) ("Opp'n") 2:7–8, ECF No. 71.)  The

10   Court cannot consider Plaintiffs' motion for summary judgment until it first determines the merits

11   of Defendant's motion for a continuance to conduct discovery under Rule 56(d).  *Garrett v. City*

12   *& Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).  Rule 56(d) prescribes: "If a

13   nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts

14   essential to justify its opposition, the court may . . . defer considering the motion or deny it."  "To

15   prevail under . . . Rule [56(d)], [a] part[y] opposing a motion for summary judgment must make

16   (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there

17   is some basis for believing that the information sought actually exists."  *Emp'rs Teamsters Local*

18   *Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129 (9th Cir. 2004).  "The

19   burden is on the party seeking additional discovery to proffer sufficient facts to show that the

20   evidence sought exists, and that it would prevent summary judgment."  *Blough v. Holland Realty,*

21   *Inc.*, 574 F.3d 1084, 1091 (9th Cir. 2009).  Further, a court may deny "further discovery if the

22   movant has failed diligently to pursue discovery in the past."  *Chance v. Pac-Tel Teletrac Inc.*,

23   242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

24         Here, Defendant contends that he needs more discovery "in analyzing the fourth Turner

25   factor 'whether the existence of easy and obvious alternatives indicates that the regulation is an

26   exaggerated response . . . .'"  (Opp'n 3:1–6.)  Specifically, Defendant asserts in a conclusory

27   manner that he "has not had an opportunity to explore" Plaintiffs' claims that CJA is distributed

28   widely.  (*Id.* at 3:9–11.)  Defendant does not, however, support these assertions of prejudice with

                                                                    7

1    an affidavit or declaration identifying the specific facts necessary to his opposition, as required by

2    Rule 56(d).  Further, Defendant has not shown that additional facts concerning one factor in a

3    four-factor test is "essential to justify its opposition" to Plaintiffs' motion.  Fed. R. Civ. P. 56(d).

4    Moreover, the Court finds that Defendant has had adequate opportunity to discover these facts in

5    the five years of litigation.  *See Chance*, 242 F.3d at 1161 n.6 (noting a court may deny "further

6    discovery if the movant has failed diligently to pursue discovery in the past.").

7            Therefore, Defendant's motion for a continuance is DENIED.

8        **B.      Plaintiffs' Motion for Partial Summary Judgment**[3]

9            Plaintiffs move for partial summary judgment on their first claim that Defendant has

10   violated Plaintiffs' First Amendment rights by refusing to distribute CJA in the Butte County Jail.

11   The Ninth Circuit has previously held in this case that Plaintiffs' First Amendment rights were

12   impinged by Defendant's regulation.  *Hrdlicka*, 631 F.3d at 1049–50.  Thus, the issue that must

13   be decided is whether Plaintiffs have shown Defendant's regulation prohibiting distribution of

14   unsolicited commercial publications is not "reasonably related to legitimate penological interests"

15   as a matter of law.  Accordingly, the Ninth Circuit held that Defendant's policy is to be reviewed

16   "under the four-factor *Turner* test."  *Id.* at 1050–51.

17           Before turning to the *Turner* factors, the Court notes that it does not write on a blank slate

18   in this case.  The Ninth Circuit has applied the *Turner* test in a series of cases concerning the

19   distribution of publications to prisoners, striking down the regulations as unconstitutional in each

20   case.  In *Crofton v. Roe*, 170 F.3d 957 (9th Cir. 1999), the court struck down a regulation that

21   prohibited a prisoner from receiving a gift book from his stepfather.  *Id.* at 960–61.  In *Prison

22   Legal News v. Cook* (*PLN I*), 238 F.3d 1145 (9th Cir. 2001), the court struck down a regulation

23   that prohibited bulk-rate nonprofit subscription publications as unconstitutional as applied to

24   *Prison Legal News*, a nonprofit organization that circulates newsletters addressing prison-related

25   issues.  *Id.* at 1148.  The court reasoned that "the receipt of such unobjectionable mail [does not]

26   _____

27   [3] Defendant argues that Plaintiffs are judicially estopped from moving for summary judgment because, in their
     opposition to Defendant's prior motion for summary judgment, Plaintiffs argued fact issues precluded summary
     judgment.  (Opp'n 2:8–11.)  Since Rule 56(b) provides that "a party may file a motion for summary judgment at any
28   time" before trial and Defendant provides no authority in support of this position, Defendant's argument lacks merit.

implicate penological interests," *Id.* at 1149, and held the jail "failed to show the ban on standard [bulk-rate] mail [was] rationally related to a legitimate penological interest." *Id.* at 1151. The Ninth Circuit extended the reasoning of *PLN I* to strike down a policy banning "for-profit, subscription publications," specifically *Montana Outdoors* magazine, in *Morrison v. Hall*, 261 F.3d 896, 903 (9th Cir. 2001).

This reasoning was extended to non-subscription bulk mail in *Prison Legal News v. Lehman* (*PLN II*), 397 F.3d 692 (9th Cir. 2005). Prison Legal News began to distribute a magazine about prison-related issues for free to inmates who had requested it. In *PLN II*, the Department of Corrections asserted four penological interests to justify its ban on non-subscription bulk mail and catalogs:

> (1) reducing the volume of mail to be searched in order to increase the likelihood of mailroom staff preventing contraband from entering the facility;
>
> (2) reducing the amount of mail coming into the jail generally in order to reduce the amount of work required to sort the mail and deliver it to inmates;
>
> (3) reducing the amount of clutter in each inmate's cell to reduce the risk of fires; and
>
> (4) reducing the amount of clutter in each inmate's cell to make searching the cell and enforcing limitations on personal property more efficient and effective.

*Id.* at 699. The court rejected each one, holding there was "no rational relation between this regulation and the penological objective of reducing the amount of mail that may contain contraband." *Id.* at 700. However, the court noted that "PLN was not sending mail to . . . correctional facilities to be distributed to all inmates, *regardless of whether they had expressed interest in receiving it*." *Id.* (emphasis added). Thus, the court held, the case was "distinguishable from *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119 (1977), in which the Supreme Court upheld a ban on junk mail sent indiscriminately to all inmates." *Id.*

To summarize, the Ninth Circuit has held prison regulations unconstitutional under *Turner* that prohibit the distribution of: (1) gift publications, (2) bulk-rate-mail nonprofit subscription

9

1    publications, (3) prepaid for-profit subscription publications, and (4) nonprofit non-subscription

2    publications (publications that inmates request but do not pay for).  The issue to be decided in this

3    case is whether Defendant can constitutionally prohibit the distribution of CJA, a for-profit non-

4    subscription publication indiscriminately sent to some (about ten percent) but not all inmates.

5         Whether a regulation "impermissibly restricts" First Amendment rights under *Turner* "is a

6    mixed question of law and fact." *Henderson v. Terhune*, 379 F.3d 709, 712 (9th Cir. 2004).  The

7    "legitimacy of prison officials' asserted penological interests are findings of fact," and the

8    ultimate constitutional question is a question of law.  *Id.*  The ultimate burden of persuasion is not

9    on the Defendant "to prove the validity of prison regulations but on" the Plaintiffs "to disprove

10   it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *see also S. Cal. Gas Co. v. City of Santa Ana*,

11   336 F.3d 885, 888 (9th Cir. 2003) (per curiam) ("[T]he party with the burden of persuasion at trial

12   . . . must establish 'beyond controversy every essential element of its' . . .  claim [to obtain

13   summary judgment].").

14                    *1.  First **Turner** Factor—Rational Connection*

15        "The first factor [the Court] must consider is whether there is a rational connection

16   between the challenged policy and a legitimate governmental interest." *Mauro v. Arpaio*, 188

17   F.3d 1054, 1059 (9th Cir. 1999).  At the summary judgment phase, the initial burden is on the

18   plaintiff to present "evidence sufficient to refute a common-sense connection between the

19   regulation and the government objective." *Ashker v. Cal. Dep't of Corr.*, 350 F.3d 917, 922–23

20   (9th Cir. 2003).  The burden then shifts to the prison official to "present enough counter-evidence

21   to show that the connection is not so 'remote as to render the policy arbitrary or irrational.'" *Id.*

22   at 922 (quoting *Frost v. Symington*, 197 F.3d 348, 357 (9th Cir. 1999)).  Here, the Ninth Circuit

23   has already held that Plaintiffs met their initial burden to refute a common-sense connection. *See*

24   *Hrdlicka*, 631 F.3d at 1055.  Therefore, the issue is whether Defendant presents sufficient

25   counter-evidence supporting a rational connection between the policy and a legitimate objective

26   to survive summary judgment.

27        In deciding this question, the Court must "(1) determine whether the regulation is

28   legitimate and neutral, and (2) assess whether there is a rational relationship between the

                                          10

1    governmental objective and the regulation." *Ashker*, 350 F.3d at 922.  Defendant must

2    "demonstrate both that those specific interests are the actual bases for their policies and that the

3    policies are reasonably related to the furtherance of the identified interests.  *An evidentiary*

4    *showing is required as to each point*."  *Casey v. Lewis*, 4 F.3d 1516, 1528 (9th Cir. 1993)

5    (alteration in original) (quoting *Walker v. Sumner*, 917 F.2d 382, 386 (9th Cir. 1990)).

6            "The first *Turner* factor is a *sine qua non*: 'If the prison fails to show that the regulation is

7    rationally related to a legitimate penological objective, [the Court does] not consider the other

8    factors.'"  *Hrdlicka*, 631 F.3d at 1051 (internal alteration omitted) (quoting *Ashker*, 350 F.3d at

9    922).  Defendants assert five justifications for their policy, which are discussed separately below.

10   Ultimately, the Court concludes Defendant does not meet his burden on three of his five

11   justifications, and the Court grants Plaintiffs partial summary judgment on these three issues.  See

12   Fed. R. Civ. P. 56(a) (stating a court may grant partial summary judgment on a "part of each

13   claim or defense").

14                      *a.   Complying with California Law*

15          Defendant asserts the policy prohibiting unsolicited and unrequested commercial mail is

16   rationally related to its legitimate interest in complying with California law.  (Opp'n 12:14–21.)

17   Compliance with state law is, beyond question, a legitimate and neutral interest.  Therefore, the

18   issue is whether the jail's policy prohibiting distribution unsolicited and unrequested commercial

19   mail, as applied to CJA, is rationally related to that interest.

20          Defendant argues that his jail reasonably believed that "CJA's practice of mailing

21   unsolicited copies of CJA directly or in bulk to inmates would violate Sections 2074 and 2076 of

22   Title 10 of California's Code of Regulations, [and therefore] any ban of unsolicited publication

23   based thereon is clearly rationally related to the jail's (and arguably Plaintiffs') interest."  (Opp'n

24   12:14–21.)  Plaintiffs counter, arguing distribution of CJA would not violate California law

25   because California Code of Regulations §§ 2074 and 2076 "are simply inapplicable to the facts of

26   this case" since the laws Defendant cites prohibit "attorneys and bail licensees from soliciting

27   business within correctional or penal facilities," and CJA is neither "designed for distribution

28   *solely* to inmate populations," nor "*one hundred (100) percent* advertising."  (Pls.' Reply to

                                              11

1    Def.'s Opp'n ("Reply") 19:17–22, ECF No. 73.)

2          In determining whether a policy is rationally related to its asserted objective, it "does not

3    matter . . . whether the policy 'in fact advances' the jail's legitimate interests.  The only question

4    . . . is whether the defendants' judgment was 'rational,' that is, whether the defendants might

5    reasonably have thought that the policy would advance its interests."  *Mauro*, 188 F.3d at 1060;

6    *accord PLN I*, 238 F.3d at 1150 ("The only question is whether prison administrators reasonably

7    could have thought the regulation would advance legitimate penological interests.").

8          Here, California law prohibits the solicitation of "business for any attorneys in and about

9    . . . county jails," Cal. Bus. & Prof. Code § 6152, and prohibits bail licensees from soliciting "any

10   person for bail in any prison, jail or other place of detention."  Cal. Code Regs. tit. 10, § 2074;

11   *accord* Cal. Code Regs. tit. 10, § 2076.  CJA includes advertisements by bail bondsmen and

12   criminal-defense lawyers.  In fact, Butte County Counsel, Bruce Alpert, in his letter refusing to

13   distribute CJA stated: "[T]he magazine consists primarily of advertisements for criminal attorneys

14   and bail bondsmen.  It is clear that your attempt to have the magazine distributed solely to pre-

15   trial detainees being housed in the Butte County Jail . . . is really an attempt to solicit business.

16   . . ." (Decl. Brad Stephens, Ex. E., at 1– 2, ECF No. 29-6.)  "Moreover, I find the advertising in

17   your magazine to be possibly illegal" under "California Code of Regulations Title 10, Section

18   2074" and under "California Code of Business and Professions Section 6152(a)(1)" which

19   "provides that it is unlawful for any person to solicit business for an attorney in a county jail."

20   (*Id.* at 2.)  Moreover, Defendant's proffered evidence shows that the then-Chief Counsel for the

21   California Department of Insurance opined in a declaration: "CJA's distribution process

22   represents an attempt to circumvent the prohibitions against locating possible bail clients in jail

23   and directly soliciting them for bail, and therefore violates both Section 2074 and 2076." (Decl.

24   Gary M. Cohen ¶ 12, ECF No. 29-3.)  Thus, there is some evidence from which a reasonable trier

25   of fact could find Defendant rationally believed distributing CJA might violate California law,

26   "and that the polic[y] [was] reasonably related to the furtherance of the identified interests."

27   *Casey*, 4 F.3d at 1528.

28          Moreover Plaintiffs' contention that CJA does not in fact violate California law is largely

12

1    irrelevant.  The question, particularly on summary judgment, is not whether distribution would in

2    fact be illegal; instead, the question is whether the jail "reasonably could have thought" it was

3    illegal—a question that Plaintiffs' motion and reply, fatally, do not address.  *PLN I*, 238 F.3d at

4    1150.  Defendant has shown that Sheriff Reniff "might reasonably have thought" prohibiting the

5    distribution of unsolicited copies of CJA "would advance its interests" in complying with

6    California law.  *Mauro*, 188 F.3d at 1060.  Therefore, the first *Turner* factor favors denying

7    Plaintiffs' motion for partial summary judgment.

8                          *b.   Complying with Contract Obligations*

9           Defendant asserts the policy is rationally related to the jail's legitimate interest in

10   complying with the terms of its contractual obligation.  Butte County Jail has an exclusive

11   contract with an advertising company that pays the jail a percentage of its profits from the sale of

12   ad space on bulletin boards in the jail.  Defendant argues distributing CJA would interfere with

13   this existing contract.  (Opp'n 12:22–26; Def.'s Mot. Summ. J; Mem. P. & A. in Supp. Thereof

14   ("Def.'s Prior Mot. Summ. J.")  18:5–20, ECF No. 29-1.)[4]  However, the Ninth Circuit previously

15   rejected this argument and held in this case, as a matter of law, "a jail has [no] legitimate

16   penological interest, for purposes of *Turner*, in protecting a profit made by impinging on inmates'

17   First Amendment rights."  *Hrdlicka*, 634 F.3d at 1053.  Therefore, Defendant's asserted interest

18   in complying with existing contracts is not a legitimate penological interest, and partial summary

19   judgment is GRANTED for Plaintiffs on this issue.  *See Lies v. Farrell Lines, Inc.*, 641 F.2d 765,

20   769 & n.3 (9th Cir. 1981) ("The partial summary judgment . . . . procedure was intended to avoid

21   a useless trial of facts and issues over which there was really never any controversy and which

22   would tend to confuse and complicate a lawsuit." (quoting 6 James Wm. Moore, et al., *Moore's*

23   *Federal Practice* ¶ 56.20(3-2) (2d ed. 1976))).

24                                *c.   Jail Security*

25          Defendant asserts the policy is rationally related to the jail's legitimate interest in security.

26   Jail security, is beyond question, a legitimate and neutral interest.  *See Turner*, 482 U.S. at 86

27   ("[J]udgments regarding prison security 'are peculiarly within the province and professional

---

28   [4] Defendant incorporated by reference his prior motion for summary judgment in his opposition.  (Opp'n 12:6.)

1    expertise of corrections officials, and . . . courts should ordinarily defer to their expert judgment

2    in such matters.'" (quoting *Pell v. Procunier*, 417 U.S., 827 (1974))).  Thus, the issue is whether

3    the jail's policy prohibiting unsolicited, unrequested commercial mail is rationally related to that

4    interest.

5        The Ninth Circuit held in this case that it was "unclear" on appeal from summary

6    judgment "the degree to which allowing distribution of CJA in the jails would produce additional

7    clutter in inmates cells or otherwise adversely affect jail security." *Hrdlicka*, 631 F.3d at 1052.

8    Plaintiffs move for summary judgment arguing, in essence, the record is clear; no reasonable trier

9    of fact could find there is a rational distinction, for jail-security purposes, between mail that has

10   been requested as opposed to mail indiscriminately sent to some but not all inmates.  Viewing

11   "the evidence in the light most favorable" to Defendant,  *McSherry*, 584 F.3d at 1135, the Court

12   cannot agree.

13       Defendant argues the prohibition on unsolicited commercial mail furthers the interest of

14   jail security, because inmates often use paper "to hide contraband, start fires, flood their cells, and

15   cover their lights and windows."  (Def.'s Prior Mot. Summ. J. 21:13–14.)  Defendant contends

16   inmates are more likely to use unsolicited unrequested publications, like CJA, because "unlike

17   attorney–client mail, personal mail, or commercial publications that inmates request, inmates

18   would have no connection to unsolicited copies of CJA."  (*Id.* at 21:21–23.)  "[T]herefore,"

19   Defendant argues, "inmates would not care if unsolicited copies were damaged, lost, or seized;

20   especially when they learn that the copies will be continuously replenished."  (*Id.* at 21:23–24.)

21       Plaintiffs counter arguing this case is like *PLN II*, in which the Ninth Circuit rejected the

22   Department of Correction's similar argument that its regulation "help[ed] reduce the risk of fire"

23   and "increase[d] the efficiency of cell searches" by reducing the "volume of mail [that] will enter

24   inmates' cells."  397 F.3d at 700.  The Ninth Circuit, in rejecting this justification, reasoned: "[I]t

25   is irrational to prohibit prisoners from receiving bulk rate mail and catalogs on the theory that it

26   reduces fire hazards because the DOC already regulates the quantity of possessions that prisoners

27   may have in their cells."  *Id.*  Plaintiffs point to Butte County Jail's similar regulation that inmates

28   "may only keep a limited amount of written materials in their cells at any given time," (Opp'n

1 | 13:23–25), and argue that as in *PLN II*, this regulation refutes the rational connection between the

2 | policy and the objective of jail security.  (*Id.* at 13:27–14:14.)

3 | However, the court in *PLN II* also noted "PLN was not sending mail to . . . correctional

4 | facilities to be distributed to all inmates, *regardless of whether they had expressed interest in*

5 | *receiving it*."  397 F.3d at 700 (emphasis added).  "In this case, every piece of mail sent by PLN

6 | is sent as a result of a request by the recipient, but the inmates were not allowed to receive it."  *Id.*

7 | Thus, the court held, the case was "distinguishable from *Jones v. North Carolina Prisoners'*

8 | *Labor Union, Inc.*, 433 U.S. 119 (1977), in which the Supreme Court upheld a ban on junk mail

9 | sent indiscriminately to all inmates."  *Id.*

10 | Here, as in *Jones*, CJA magazines would be sent indiscriminately to some but not all

11 | inmates whether they requested it or not—making this case distinguishable from *PLN II*.

12 | Moreover, Defendant has submitted evidence of two specific and current examples to support the

13 | jail's reasoning that the regulation is rationally related to jail security:

> First, paper back books are donated to the Jail by the local
> community, and after being searched, the books are placed on a cart
> that is moved throughout the different housing areas.  Inmates are
> instructed that they may take one book, but before doing so, are
> asked to return any book they already have in their possession.
> Notwithstanding these basic rules, inmates are often found hoarding
> the books, destroying the books, and using torn pages from the
> books to hide contraband, start fires, plug their toilets, or cover the
> windows and/or lights in their cells.  Both officers believe that
> unsolicited copies of CJA would be treated in a similar fashion.

> Second, by law, the Jail must provide a telephone book in
> every one of the twenty-four day room areas in the Jail. The inmates
> constantly tear out the pages of the phone books, and use the pages
> to hide contraband, start fires, plug their toilets, and cover their
> lights and windows.  On average, every phone book in the Jail has
> to be replaced once a month.  Again, both officers believe that
> unsolicited copies of CJA would be treated in a similar fashion.

24 | (Def.'s Prior Mot. Summ. J. 21:26–22:10 (citations omitted) (citing UMF Nos. 28–29).)  This

25 | evidence supports the reasonable inference that inmates may be more likely to destroy CJA than

26 | other materials, because they know CJA will be replenished and they did not request CJA;

27 | whereas, a publication gifted from a friend or relative may have sentimental value, and inmates

28 | may value specifically requested publications, even free ones, more than a publication they

1    received but did not request.  Moreover, even though jail regulations already limit the total

2    quantity of paper in the cells, these regulations do not mollify Defendant's contention that

3    inmates are more likely to destroy the portion of that limited quantity that was obtained without

4    request, than destroy the portion they requested or received by specific gift.  Thus, a reasonable

5    trier of fact could find there is a rational distinction between unrequested unsolicited publications

6    sent indiscriminately to some, but not all, inmates, and gift publications sent to a specific inmate

7    or free publications specifically requested by inmates.  Therefore, the Court cannot say on the

8    record before it that there is no rational connection between the legitimate interest in jail security

9    and the policy.

10        Plaintiffs counter Defendant's proffered evidence is "wholly contradicted by the direct

11   evidence that inmates treasure *Crime Justice & America* as being one of the few helpful resources

12   they access to while in jail."  (Mot. Summ. J. 16:1–3.)  Plaintiffs submit they "have received

13   literally thousands of letters from inmates . . . applauding the publication as their sole access to

14   meaningful material and pertinent information that is so important for them to receive as

15   inmates."  (*Id.* at 1:25–2:10.)  Plaintiffs contend "the magazine cannot be considered 'junk mail.'"

16   (*Id.* at 2:8–10.)

17        Here, however, Plaintiffs' contradicting, probative evidence reveals a genuine dispute of

18   material fact whether prohibiting CJA is rationally related to the interest in prison security, but

19   does not establish that Plaintiffs are entitled to judgment as a matter of law.  Therefore, the

20   interest in jail security and the first *Turner* factor favor denying Plaintiffs' motion for partial

21   summary judgment on this issue.

22            *d.   Staff Resources*

23        Defendant argues the policy is rationally related to preserving staff resources, which is a

24   legitimate and neutral interest.  (Opp'n 12:6–9.)  Defendant argues the increase in the time

25   required to process unsolicited unrequested commercial mail will drain essential prison resources.

26   However, as the Ninth Circuit previously observed in this case: "Officers at Butte County Jail

27   provided no information quantifying the additional resources that would be required to distribute

28   CJA.  Indeed, they did not even provide information about the resources the jail currently devotes

16

1   to mail delivery." *Hrdlicka*, 631 F.3d at 1052–53.  On remand, Defendant has not provided this

2   Court sufficient additional evidence either.  Therefore, Plaintiffs' motion for partial summary

3   judgment is GRANTED on this issue.

4                      *e.   Maintaining the Jail as a Non-Public Forum*

5        Defendant argues the policy is rationally related to maintaining the jail's status as a non-

6   public forum.  (Opp'n 12:6.)  However, Defendant offers no authority to support the proposition

7   that a jail or "prison"—"most emphatically not a 'public forum,'" *Jones*, 433 U.S. at 136—may

8   somehow lose its non-public forum status.  Defendant cites *Perry Education Association v. Perry*

9   *Local Educators' Association*, 460 U.S. 37 (1983), but that case stands for the contrary

10  proposition.  In *Perry*, the Court held that even though the school district permitted one union's

11  newsletter to be distributed to teachers' internal mailboxes, because it was a non-public forum,

12  the school could still nonetheless prohibit another union's newsletter.  *Id.* at 55.  Applying *Perry*

13  to this case, even if Defendant was required to distribute CJA, the jail could still prohibit other

14  solicitations.  *See id.* ("Conversely on government property that has not been made a public

15  forum, not all speech is equally situated, and the state may draw distinctions which relate to the

16  special purpose for which the property is used.  As we have explained above, for a school mail

17  facility, the difference in status between the exclusive bargaining representative and its rival is

18  such a distinction.").  Therefore, Plaintiffs' motion for partial summary judgment is GRANTED

19  on this issue as well.

20            **2.  *Remaining* Turner *Factors***

21        The second *Turner* factor "is whether there are alternative means of exercising the right

22  that remain open to prison inmates." *Turner*,  482 U.S. at 90.  Defendant argues Plaintiffs, as an

23  alternative means of access, may pay to advertise on the bulletin boards in the jail and wait for

24  inmates to subscribe, or place CJA in the library.  (Opp'n 13:11–20.)  Plaintiffs counter arguing

25  CJA's content addresses issues germane to inmates awaiting trial, such that inmates have an

26  immediate need for the information in CJA.  "[T]he only way for an inmate[, CJA's intended

27  audience,] to know about *Crime, Justice & America* is for the magazine to be distributed to the

28  inmates," because "[c]ounty jail populations turn over too quickly for other potential

                                   17

1    advertisement campaigns . . . to reach [CJA's] intended audience." (Mot. Summ. J. 18:7–18.)

2    Regarding Defendant's specific proposed alternatives, Plaintiffs reply purchasing advertising is

3    unrealistic: "[CJA] cannot automatically purchase space on the Partners jail [bulletin] board.

4    Rather, there is a periodic lottery to determine who can advertise on the jail board.  Thus,

5    Plaintiffs' ability to exercise their First Amendment Rights would be dependent upon a lottery."

6    (Reply 32:1–7.)  Plaintiffs argue, in a conclusory manner, the library is not a viable alternative,

7    because: "A jail library is used by a limited number of inmates at any given time, and generally

8    used by long term residents," such that CJA's "intended audience would likely never see the

9    publication." (*Id.* at 32:8–16.)

10        Here, Plaintiffs are correct that waiting for inmates to request CJA is not a viable

11   alternative, because of the immediacy of inmates' need for the information in CJA, and "many

12   inmates will have left the jail before they can learn about the existence of CJA, request that it be

13   sent to them, and then receive it." *Hrdlicka*, 631 F.3d at 1054.  Moreover, the Court finds that

14   merely advertising CJA on the jail bulletin board is an inadequate alternative, because Plaintiffs'

15   First Amendment right would be contingent on the results of a lottery.

16        However, Plaintiffs have not pointed to any evidence in the record that the library is an

17   inadequate alternative, beyond their conclusory assertion that mostly "long-term residents" use

18   the library.  On the contrary, Plaintiffs' own evidence suggests that CJA perhaps appropriately

19   belongs in the jail library: California's Principal Librarian stated, "[i]n my professional opinion, I

20   would recommend your magazine as an acceptable donation to the California Department of

21   Corrections Law Libraries."  (Decl. Ray Hrdlicka, Ex. A, p. 3, ¶ 15, ECF No. 68-3.)

22        Therefore, there remains a genuine dispute of material fact whether there are "alternative

23   means of exercising the right that remain open," namely, distributing CJA through the Butte

24   County Jail library. *Turner*, 482 U.S. at 90.

25        Thus, resolution of two of the four *Turner* factors—the first factor being the most

26   important , *see Cal. First Amend. Coal. v. Woodford*, 299 F.3d 868, 883 (9th Cir. 2002) ("the first

27   factor is arguably dispositive")—turns on disputes of material fact that preclude summary

28   judgment.  Therefore, Plaintiffs cannot meet their burden to show they are entitled to partial

18

1  summary judgment on these issues as a matter of law.  Thus, in light of the factual disputes on

2  two of the four factors, the Court need not reach the third and fourth factors—"the impact

3  accommodation of the asserted constitutional right will have on guards and other inmates, and on

4  the allocation of prison resources generally," *Id.*, and whether the policy is an "'exaggerated

5  response' to prison concerns" *Id.*—to determine that Plaintiffs, the party with the ultimate burden

6  of persuasion, failed to show that a "rational trier of fact" could not find in Defendant's favor.  *S.*

7  *Cal. Gas. Co.*, 336 F.3d at 888.

8        Therefore, the Court GRANTS Plaintiffs' motion for partial summary judgment in part,

9  finding that Defendant has not met his burden to show his asserted interests in complying with

10  existing contract obligations, staff resources, and maintaining the jail's non-public forum status

11  are "rationally related to a legitimate penological objective." *Hrdlicka*, 631 F.3d at 1051.

12  Moreover, the Court DENIES Plaintiffs' motion for partial summary judgment in part,

13  concluding that genuine disputes of material fact preclude summary judgment concerning

14  Defendant's asserted interests in complying with California law and jail security.

15        **C.      Plaintiffs' Motion for Judgment on Remand**

16        Since, for the reasons stated above, genuine disputes of material fact preclude summary

17  judgment in part, Plaintiffs' unprecedented motion for entry of judgment on remand is DENIED.

18        **D.      Defendant's Countermotion for Partial Summary Judgment**

19        After the case was remanded from the Ninth Circuit, Plaintiffs amended their complaint—

20  with leave from the Court (ECF No. 64)—to assert a claim for damages against the Butte County

21  Sheriff in his official capacity under 42 U.S.C. § 1983 for constitutional violations under color of

22  state law.  (First Amended Compl., ECF No. 65.)  Defendant countermoves for partial summary

23  judgment on this claim, arguing "Plaintiffs cannot establish the denial of distribution was

24  'deliberately indifferent' to Plaintiffs' rights for purposes of *Monell*."  (Opp'n 7:15–17.)

25  Plaintiffs counter in their reply that the "issue of 'deliberate indifference'" is irrelevant because it

26  only applies if a plaintiff asserts "the government entity's 'failure to act' or 'failure to train' was

27  the moving force behind the officials' . . . unconstitutional acts."  (Reply 9:3–15.)  Moreover,

28  Plaintiffs argue that by "denying distribution of [Plaintiffs'] publication, Butte County officials

1    acted pursuant to a formal, written policy of the county," such that they are liable under *Monell*.

2    (*Id.* at 10:2–6.)

3        Plaintiffs are correct.  Although a municipality cannot be held liable under § 1983 under a

4    respondeat superior theory, unquestionably, municipalities can be found liable if "the execution

5    of the municipalities official policy" itself causes the constitutional injury.  *City of Canton v.*

6    *Harris*, 489 U.S. 378, 385–86 (1989) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)).

7    "Deliberate indifference" must be shown only where the plaintiff asserts *Monell* liability based on

8    a "'failure to train' theory."  *Id.* at 388.  Thus, because the Butte County Jail prohibited

9    distribution of CJA avowedly pursuant to its official policy prohibiting unsolicited commercial

10    mail, Plaintiffs' *Monell* claim can proceed against the Sheriff in his official capacity.  Therefore,

11    Defendant's countermotion (ECF No. 71) is DENIED.

12                 **CONCLUSION**

13        Based on the foregoing, Defendant's Rule 56(d) motion for a continuance is DENIED.

14    Plaintiffs' motion for partial summary judgment is GRANTED in part on Defendant's asserted

15    interests in complying with existing contract obligations, staff resources, and maintaining the

16    jail's non-public forum status.  Plaintiff's motion for partial summary judgment is DENIED

17    regarding Defendant's asserted interests in complying with California law and jail security.

18    Plaintiffs' motion for judgment on remand is DENIED.  Defendant's counter-motion for partial

19    summary judgment is DENIED.

20        IT IS SO ORDERED

21    DATED:       July 12, 2013

22

23

24                 Troy L. Nunley

25                 United States District Judge

26

27

28