**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Terence J. Cassidy, SBN 99180
John R. Whitefleet, SBN 213301
350 University Ave., Suite 200
Sacramento, California 95825
TEL: 916.929.1481
FAX: 916.927.3706

Bruce S. Alpert, SBN 75684
County Counsel
Brad J. Stephens SBN212246
Chief Deputy County Counsel
BUTTE COUNTY COUNSEL
25 County Center Drive
Oroville, CA 95965
TEL: 530.538.7621
FAX: 530.538.6891

Attorneys for Defendant JERRY SMITH

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRIME, JUSTICE & AMERICA, INC., a California Corporation; and RAY HRDLICKA, in individual, <br><br> Plaintiffs, <br><br> vs. <br><br> JERRY SMITH, in his official capacity of Sheriff of the County of Butte, California, <br><br> Defendant. <br> _____/ | Case No.: CIV. 2:08-cv-00343-TLN-EFB <br><br> **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br> Date: November 14, 2013 <br> Time: 2:00 p.m. <br> Location: Courtroom 2 |

Defendant JERRY SMITH hereby submits the following in Opposition to Plaintiffs' Motion for Preliminary Injunction.

///

///

///

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

1

01192874.WPD    OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

# I.

# INTRODUCTION/BACKGROUND

Originally filed in early 2008, Plaintiffs did not seek a preliminary injunction prior to dismissal by way of summary judgment. After, the Ninth Circuit announced in 2012 that Plaintiffs indeed had a First Amendment right to distribute its unsolicited publication in a jail setting, the matter was remanded to this court in February 2012. (Docket Entry No. 51). Plaintiffs did not seek any preliminary injunctive relief by way of motion. Plaintiffs waited until November 2012 to file a motion for summary judgment, but then sought to amend the complaint. After Plaintiffs filed an Amended Complaint in December 2012 (Docket Entry No. 65), Plaintiffs again moved for summary judgment. (Docket Entry No. 68). This motion was granted in part and denied in part on July 15, 2013. (Docket Entry No. 79).

Significantly, in analyzing whether Plaintiff could establish there was a First Amendment violation, the court found triable issues as to the first of four Turner[1] factors regarding whether Defendant's regulation is rationally related to a legitimate penological objective based on (1) compliance with California law, and (2) the jail's legitimate interest in security because of inmates' prior treatment of paper. This court noted as to compliance with California law:

> In determining whether a policy is rationally related to its asserted objective, it "does not matter . . . whether the policy 'in fact advances' the jail's legitimate interests. The only question . . . is whether the defendants' judgment was 'rational,' that is, whether the defendants might reasonably have thought that the policy would advance its interests." *Mauro*, 188 F.3d at 1060; *accord PLN I*, 238 F.3d at 1150 ("The only question is whether prison administrators reasonably could have thought the regulation would advance legitimate penological interests.").
>
> Here, California law prohibits the solicitation of "business for any attorneys in and about . . . county jails," Cal. Bus. & Prof. Code § 6152, and prohibits bail licensees from soliciting "any person for bail in any prison, jail or other place of detention." Cal. Code Regs. tit. 10, § 2074; *accord* Cal. Code Regs. tit. 10, § 2076. CJA includes advertisements by bail bondsmen and criminal-defense lawyers. In fact, Butte County Counsel, Bruce Alpert, in his letter refusing to distribute CJA stated: "[T]he magazine consists primarily of advertisements for criminal attorneys and bail bondsmen. It is clear that your attempt to have the magazine distributed solely to pre-trial detainees being housed in the Butte County Jail . . . is really an attempt to solicit business. . . ." (Decl. Brad Stephens, Ex. E., at 1– 2, ECF No. 29-6.) "Moreover, I find the advertising in your magazine to be possibly illegal" under "California Code of Regulations Title 10, Section 2074" and under "California Code of Business and Professions Section 6152(a)(1)" which "provides that it is unlawful for any person

---

[1] Turner v. Safley, 482 U.S. 78 (1987)

to solicit business for an attorney in a county jail." (*Id.* at 2.) Moreover, Defendant's proffered evidence shows that the then-Chief Counsel for the California Department of Insurance opined in a declaration: "CJA's distribution process represents an attempt to circumvent the prohibitions against locating possible bail clients in jail and directly soliciting them for bail, and therefore violates both Section 2074 and 2076." (Decl. Gary M. Cohen ¶ 12, ECF No. 29-3.) Thus, there is some evidence from which a reasonable trier of fact could find Defendant rationally believed distributing CJA might violate California law, "and that the polic[y] [was] reasonably related to the furtherance of the identified interests." *Casey*, 4 F.3d at 1528.

As to the jail's legitimate interest in security because of inmates' prior treatment of paper, the court noted:

> ...a reasonable trier of fact could find there is a rational distinction between unrequested unsolicited publications sent indiscriminately to some, but not all, inmates, and gift publications sent to a specific inmate or free publications specifically requested by inmates. Therefore, the Court cannot say on the record before it that there is no rational connection between the legitimate interest in jail security and the policy.

Analyzing the second of the four Turner factors, whether there are alternative means of exercising the right that remains open to prison inmates, the court rejected the argument that the library was not an appropriate alternative, and found a triable issue, noting that

> Plaintiffs' own evidence suggests that CJA perhaps appropriately belongs in the jail library: California's Principal Librarian stated, "[i]n my professional opinion, I would recommend your magazine as an acceptable donation to the California Department of Corrections Law Libraries." (Decl. Ray Hrdlicka, Ex. A, p. 3, ¶ 15, ECF No. 68-3.)

The court did not reach the third and fourth Turner factors—"the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and whether the policy is an "'exaggerated response' to prison concerns."

Three months after this ruling, Plaintiffs now seek relief by way of preliminary injunction.

## II.

## LEGAL STANDARD FOR PRELIMINARY INJUNCTION

The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. Los Angeles Memorial Coliseum Com. v. National Football League, 634 F.2d 1197, 1200 (9th Cir. 1980). The "status quo" is described as the last uncontested status preceding the pending controversy. GoTo.com, Inc. v. Walt Disney Co., 202 F.3d

3

01192874.WPD   **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1199, 1210 (9th Cir. 2000). In order to obtain a preliminary injunction, a plaintiff must traditionally demonstrate: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury; (3) greater hardship to the plaintiff than to the defendants; and (4) that the public interest favors granting the injunction. Id. at 1200-1201. The moving party may meet its burden by demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips sharply in his/her favor. Id. at 1201. These are not separate tests, but rather, the outer reaches of a single continuum. Id.

A heightened burden applies, however, to preliminary injunctions that seek to disturb the status quo or provide the movant substantially all the relief he may recover after a full trial on the merits. SCFC ILC, Inc. v. Visa, USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991). In such situations, the movant has the even heavier burden of showing that the four factors "weigh heavily and compellingly in [his/her] favor." Id. at 1098. See also Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (mandatory preliminary relief is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party) and Martin v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984) (in cases where a party seeks relief that goes well beyond maintaining the status quo, "courts should be extremely cautious about issuing a preliminary injunction.")

Here, the relief requested by Plaintiffs goes beyond merely preserving the status quo. Rather, Plaintiffs seeks extraordinary protections and affirmative relief, i.e inclusion of their publication to be distributed within the Butte County Jail. As this is exactly the relief Plaintiffs are seeking by way this suit, Defendant respectfully submits that the heightened burden applies to Plaintiffs' motion for preliminary injunction.

### III.

### ARGUMENT

**A.   Plaintiffs Cannot Show a Strong Likelihood of Success on Their Claim for Injunctive Relief**

In order to establish that they are likely to succeed on the merits, Plaintiffs must demonstrate a strong likelihood of prevailing on their case-in-chief and of overcoming any affirmative defenses.

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

4
01192874.WPD    **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1015, fn. 3 (9th Cir. 2001). A heightened burden applies, however, to preliminary injunctions that seek to disturb the status quo or provide the movant substantially all the relief he may recover after a full trial on the merits. SCFC ILC, Inc. v. Visa, USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991). In such situations, the movant has the even heavier burden of showing that the four factors "weigh heavily and compellingly in [his/her] favor."

If a movant fails to demonstrate a likelihood of success on the merits, there is no need to weigh the relative hardships which a preliminary injunction or the lack of one might cause the parties. Texas v. Seatrain International, S. A., 518 F.2d 175, 180 (5th Cir. 1975).

Here, Plaintiffs first have made no effort to recognize or argue that each of the factors for gaining preliminary injunctive relief were establish by "heavy and compelling" evidence. For this reason alone, the motion must be denied.

Regardless, Plaintiffs impermissibly seek another bite at the summary judgment motion by submitting additional evidence to counter the arguments regarding both. This is not only improper, but fails to establish a heavy and compelling likelihood of success. Plaintiffs conveniently ignore this court's prior ruling on their own motion for summary judgment, finding triable issues on the first of four of the Turner tests. In fact, there were two parts to those triable issues, reasonable belief of compliance with California law and jail security. Because the court has previously found triable issues, it would appear illogical that Plaintiffs believe they could establish compelling reasons to grant preliminary injunctive relief.

Nonetheless, Plaintiffs argue a likelihood of success on the issues of jail security and whether Defendant had a reasonable belief the publication would violate California law. Defendant submits Plaintiffs fail to establish there is compelling evidence of a likelihood of success.

As to jail security, Plaintiffs curiously do not argue the evidence they actually offer by way of the declarations of Kenneth Kerle, Richard Lichten, or Daniel Vasquez. (See pp. 5:16-8:24, Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction). A review of this evidence, however, reveals how it actually supports the denial of the motion. Richard Lichten admits the publication can be expected to be used to clog toilets, hide contraband, used as kindling and other "nefarious purposes" (Lichten Declaration, ¶ 16). Daniel

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

5
01192874.WPD   OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Vasquez acknowledged CJA may be used for nefarious purposes (Vasquez Declaration, ¶ 17). These acknowledgments that CJA will be used by inmates as contraband and other "nefarious" purposes only serves to underscore that a jury may find the policy ban rationally related to legitimate penalogical interests. That Kenneth Kerle, Richard Lichten, or Daniel Vasquez speculate the publication will not cause additional harm is not only speculation, unsupported by any facts, but also irrelevant in terms of whether a rational relation exists as well as internally inconsistent. (See Defendant's Objections/Motion to Strike). Indeed, in deciding Plaintiffs' Motion for Summary Judgment, this court noted the contradictory evidence. (Docket No.79, p. 16:17-21). At the very least, Defendant submits Plaintiffs' own evidence shows that they cannot establish a strong likelihood of prevailing on their case-in-chief, much less the heightened standard of "heavily and compelling" likelihood. Lastly, Plaintiffs conveniently ignore Defendant's evidence submitted in opposition of the summary judgment, which this court acknowledged on summary judgment, that inmates have no emotional or other connection to the materials, like the phone book, and that Lt. Flicker's declaration establish that inmates are more likely to destroy such materials that do not have said connection. For these additional reasons, the motion must be denied.

As to compliance with California law, Plaintiffs again try to argue their conduct does not actually violate said laws. (See pp. 11: 4-13:1, Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction). This court has already rejected this approach as "largely irrelevant." (Docket Entry No. 79, p. 13:1-3) (The question...is not whether distribution would in fact be illegal; instead, the question is whether the jail "reasonably could have thought" it was illegal...".) Accordingly, Defendant submits Plaintiffs must establish the Sheriff's Department could not have reasonably believed the distribution of CJA would violate California law.

In that regard, Plaintiffs rely on a 2001 opinion by the Department of Insurance regarding signboards. Defendant submits Plaintiffs may not rely on this opinion as it not applicable[2] and/or distinguishable. First, this court has rejected that signboards were a viable alternative, and thus any opinions about the legality of the use of signboards for advertising would appear irrelevant.

---

[2]Indeed, in his letter dated September 8 2004, Jason Grohs, counsel for CJA at the time, noted the 2001 DOI opinion was not authority directly on point. (pg. 2 of Ex. F. to Declaration of Hrdlicka,)

6

01192874.WPD          **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Second, Plaintiffs' attempt to draw parallels of "passive" advertising to its publication as compared to the Yellow Pages is without merit. To the contrary, Plaintiffs target inmates in jails, and distribute in jails. This is hardly the same as the Yellow Pages, which is available to anyone anywhere, for which the jail happens to include within the jail. Moreover, a stationary, singular access point like a signboard cannot be compared to widespread distribution within the jail as Plaintiffs propose to accomplish. Lastly, the declaration of Cohen in 2004 specifically addressed CJA's method of delivery and disagreed such was passive advertising.

Thirdly, Plaintiffs failed to present any evidence as to how the evidence presented by Defendant in opposing their summary judgment motion, particularly the opinions set forth in the declarations of County Counsel Bruce Alpert and Brad Stephens, would not be sufficient evidence by and of themselves for the Sheriff to rationally base the jail regulation. Contrary to Plaintiffs' argument, there clearly was more evidence than the 2005 opinion by counsel for DOI, but also the analysis of County Counsel. While Plaintiffs seek to distinguish the case against Sonoma County, they ignore that the jury found no violation by the ban in that case. (See Defendant's Request for Judicial Notice, Docket 29-3). What Sonoma County does now is irrelevant to what Defendant rationally believed is the basis for its policy. Lastly, Plaintiffs present no evidence the 2001 DOI opinion was somehow accepted by the Defendant or even known prior to its enactment of any policy. Ultimately, Plaintiffs present no evidence the Sheriff's Department policy was not based on a reasonable belief of a violation of California law, and/or the prior determination by this court on summary judgment establishes Plaintiffs cannot establish a strong likelihood of prevailing on their case-in-chief, much less the heightened standard of heavily and compelling evidence. For this additional reason, the motion must be denied.

**1.  Second Turner factor**

The second Turner factor "is whether there are alternative means of exercising the right that remain open to prison inmates." Turner, 482 U.S. at 90. Plaintiffs again reject the library, primarily based on unfounded hearsay by counsel for CJA. (See Declaration of Spencer Freeman; Defendant's Objections/Motion to Strike). Insofar as the evidence is inadmissible, Plaintiffs cannot rely on same. Regardless, what is telling is that Mr. Freeman admits the library carries books and periodicals. He

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

7
01192874.WPD   **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

also admits inmates have access to the library, and thus any publications therein. While he claims a minimum of four inmates "per day" have access, he conveniently omits what the maximum number of inmates have access to the library. This omission, together with the California's Principal Librarian stated, "[i]n my professional opinion, I would recommend your magazine as an acceptable donation to the California Department of Corrections Law Libraries," infers the likelihood that Plaintiffs in fact do have a viable alternative to allowing a significant number of inmate to see its publication on a daily basis, in the library. Moreover, Plaintiffs appear to fail to account for illiteracy, non-English speakers that inevitably make a portion of the inmate population that impacts who may seek to read it. Accordingly, Plaintiffs cannot establish a strong likelihood of prevailing on their case-in-chief, much less by the heightened standard of heavily and compelling evidence. For this additional reason, the motion must be denied.

### 2. Third Turner Factor

The third Turner factor is "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Here, Plaintiffs present no evidence at all. On this basis alone, Plaintiffs leave Defendant and this court to speculate what evidence Plaintiffs believe exists to support the granting of a preliminary injunction. Plaintiffs point to "an additional 11" pieces of mail, but it is unknown how this figure is arrived, and is inconsistent with the Declaration of Ray Hrdlicka (See Defendant's Objections/Motion to Strike.).

Regardless, as Defendant noted in opposing the motion for summary judgment, even an additional "11 additional mailings per day" (assuming Plaintiffs would adhere to this restriction) cannot be considered "de minimis" and Plaintiffs' reliance on <u>Prison Legal News v. Cook</u>, 238 F. 3d 1145,1151 (9th Cir 2001) is improper. The court in PLN I noted the prison mail room staff processed 5000 to 8000 pieces of first class mail daily. <u>Id</u> at 1147. Here, by comparison, the staff processed 200 pieces per day in 2008. 11 extra pieces is a 5.5% increase versus .6% in PLN. In terms of scale, even five percent clearly has more of a ripple affect on a smaller jail. In addition, Plaintiffs speculate such "would not take much additional time." but present no evidence to support such a contention. Therefore, Plaintiffs have not established a strong likelihood of prevailing on

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

8

01192874.WPD   **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

1 their case-in-chief on this factor, much less by the heightened standard of heavily and compelling
2 evidence. For this additional reason, the motion must be denied

### 3. Fourth Turner Factor

While the fourth Turner factor requires consideration of "whether the existence of easy and obvious alternatives indicates that the regulation is an exaggerated response by prison officials, " given Plaintiffs' rejection of the consideration of dissemination of CJA in the library, and thus Plaintiffs' insistence that its way is the only way to distribute its "magazine," Defendant submits such suggests Plaintiffs have foreclosed any "easy and obvious" alternatives. Despite the lack of admissible evidence that CJA is actually distributed in comparable jails, Plaintiffs offer no comparison that such cooperating jails are comparable to the County of Butte in said unsolicited distribution, nor the manner of said distribution. To the contrary, the County of Sonoma, which can house up to 790 inmates prevailed on summary judgment. (See Defendant's Request for Judicial Notice, Docket 29-3). Accordingly, it would appear Plaintiffs must admit its direct unsolicited mailings methodology forces the County to cater to Plaintiffs non-subscription business model. On this additional basis, Defendant submits Plaintiffs have not established a strong likelihood of prevailing on their case-in-chief on this factor, much less by the heightened standard of heavily and compelling evidence. For this additional reason, the motion must be denied.

### B. Plaintiffs Have Failed to Show a Strong Possibility of Irreparable Injury

Assuming arguendo, the court finds Plaintiffs have made the requisite showing of likelihood of success on the merits by heavy and compelling evidence, Defendant submits Plaintiffs have not established a strong possibility of irreparable injury. In order to demonstrate irreparable injury, Plaintiffs must demonstrate potential harm, which cannot be redressed by a legal or equitable remedy following trial. Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3rd Cir. 1992). "The moving party must make a clear showing of immediate irreparable harm." Id. at 91.

Plaintiffs essentially seek to have their publication distributed at the jail prior to trial, the very remedy they seek at trial. Yet the only 'irreparable injury" is the claimed loss of First Amendment freedoms - which of course depends whether Plaintiffs can establish Defendant violates each of the Turner factors. Plaintiffs here present the cart before the horse by presuming a violation of the First

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

9
01192874.WPD   **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Amendment, and then stand on the alleged violation as 'irreparable injury." As this is the same remedy Plaintiffs seek to gain following trial, there is no harm which cannot be redressed thereby.

Moreover, in the five years that this case has proceeded, Plaintiffs waited until after this court determined they did not meet the standard on summary judgment to seek preliminary injunctive relief. Surely such a delay cuts against any proposition that Plaintiffs' claimed harm are to be considered "immediate." For these additional reasons, the motion should be denied.

**C.    The Balance of Hardships Weighs Heavily in Favor of Defendant**

Before a preliminary injunction may issue, a Court must also identify the harm that a preliminary injunction might cause the Defendants and weigh it against Plaintiffs' threatened injury. Scotts Co. v. United Industries Corp., 315 F.3d 264, 284 (4th Cir. 2002). Judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration. Goff v. Harper, 60 F.3d 518, 519 (8th Cir. 1995). Even in the face of ongoing unconstitutional conduct on the part of state law enforcement officers, an injunction may not be issued to halt that conduct absent a great and immediate threat that plaintiffs will suffer irreparable injury for which there would be no inadequate remedy at law. Nava v. City of Dublin, 121 F.3d 453, 458 (9th Cir. 1997).

Here, Plaintiffs present no authorities to support the proposition that the hardships weigh heavily in their favor. Rather, Plaintiffs point to one aspect the court denied on summary judgment regarding jail resources, which of course was not dispositive of any of the Turner factors, and certainly did not establish a violation of the First Amendment. Moreover, that Plaintiffs claim no reports of "problems or issues" is irrelevant to whether forcing Defendant to distribute CJA would not present a hardship, given that it is undecided whether a jury would consider jail security a rational basis for Defendant's policy. Accordingly, Plaintiffs' motion should be denied.

**D.    Plaintiffs Have Failed to Show That the Public Interest Favors Granting the Injunction**

Where the public interest is involved, the Court must also determine whether the public interest favors the moving party. Sammartano v. First Judicial Dist. Ct., in and for County of Carson City, 303 F.3d 959, 974 (9th Cir. 2002). Plaintiffs argue the public interest is served by distribution because CJA presents "reading material" which engages inmates. Defendants submit whether such

1  "reading material" would engage inmates is subjective, dependent on literate, English-speaking
2  inmates, which is only speculative. Plaintiffs' implication that CJA "keeps minds sharp"
3  presupposes any particular quality of content, but would be indistinguishable from any other reading
4  material in that regard. Regardless, this case is not about access to reading materials as inmates have
5  access to a library. Plaintiffs fail to show how the public interest would be served by its own
6  methodology of publication, versus alternatives they refuse to consider. Accordingly, Plaintiffs'
7  motion should be denied.

8  There is, however, a legitimate public interest in assuring that public funds are appropriately
9  expended. Rosado v. Alameida, 349 F. Supp. 2d 1340, 1349 (S.D. Cal. 2004). In that regard, should
10 Plaintiffs ultimately not succeed on the merits of their claims, any temporary dissemination within
11 the jail would have been an unnecessary expense to the County in processing and distributing same.
12 Therefore, the public interest in assuring that public funds are appropriately expended versus
13 Plaintiffs' own interest weighs in favor of not granting the preliminary injunction.

## IV.

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that Plaintiffs' Motion for Preliminary Injunction be denied.

Respectfully submitted,

Dated: October 31, 2013         PORTER SCOTT
                                A PROFESSIONAL CORPORATION

                                By     /s/ John R. Whitefleet
                                       Terence J. Cassidy
                                       John R. Whitefleet
                                       Attorneys for Defendant

PORTER | SCOTT
ATTORNEYS
350 UNIVERSITY AVE., SUITE 200
SACRAMENTO, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

11
01192874.WPD      **OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**